**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KIA CORPORATION,<br><br>            Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS and<br>UNINCORPORATED ASSOCIATIONS<br>IDENTIFIED ON SCHEDULE "A",<br><br>            Defendants. | Case No. 26-cv-07902 |

**COMPLAINT**

Plaintiff, Kia Corporation ("Kia" or "Plaintiff"), hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, the "Defendants") and alleges as follows:

**I. JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars from U.S. consumers, and have sold products using infringing and counterfeit versions of Plaintiff's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## II. INTRODUCTION

3.      This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by offering for sale and selling unauthorized and unlicensed products, namely automotive parts and accessory products, using infringing and counterfeit versions of the federally registered Kia trademarks (the "Counterfeit Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Counterfeit Products to unknowing consumers. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of the registered Kia trademarks, as well as to protect unknowing consumers from purchasing the Counterfeit Products over the Internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of the valuable Kia trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

**Plaintiff**

4. Plaintiff Kia Corporation is a Korean corporation with its principal place of business located at 12 Heolleung-ro Seocho-gu Seoul 06797, Republic of Korea.

5. Kia Corporation was founded in 1944 and has risen to be one of the most preeminent automotive brands in the world. Kia is one of the largest producers of automotive vehicles in the world, with significant volume of vehicles sales globally, resulting in substantial revenue. Kia America, Inc., a subsidiary of Kia Corporation, has operated in the United States for over thirty years and handles sales, distribution, and related business activities in the United States.

6. Kia offers several models in its lineup, including, but not limited to, Sportage, Seltos, Sorento, Telluride, Carnival, EV9, and more.

7. Propelled by its reputation and recognizable trademarks, which are carefully curated and monitored, consumers recognize Plaintiff and the Kia brand as a source of reliable and quality vehicles, vehicle parts, and accessories (collectively, the "Kia Products"). Kia has registered many of the Kia trademarks with the United States Patent and Trademark Office. Kia Products typically include at least one of Kia's registered trademarks. Kia uses its trademarks in connection with the marketing of its Kia Products, including the following marks which are collectively referred to as the "Kia Trademarks."

| Registration No. | Trademark |
|---|---|
| 7,209,657<br>7,256,870<br>7,209,646<br>7,215,526<br>7,215,527<br>7,215,510<br>7,209,648<br>7,215,521<br>1,723,608 | KIA |

| Registration No. | Trademark |
|---|---|
| 3,209,737 | CARENS |
| 8,168,218 | EV6 |
| 6,259,214 | K4 |
| 6,411,905 | K5 |
| 6,162,187 | K7 |
| 5,061,428 | NIRO |
| 2,748,779 | SORENTO |
| 3,473,433 | SOUL |
| 1,810,658 | SPORTAGE |
| 5,454,609 | STINGER |
| 6,248,142<br>6,874,542<br>6,303,302<br>6,248,140<br>6,733,895<br>6,681,487<br>6,248,146 | |
| 6,952,085<br>7,077,577<br>7,095,531 | |
| 5,273,518<br>2,351,320<br>5,752,402 | |
| 3,867,593 | |
| 6,613,141<br>7,238,862 | |
| 6,613,144<br>7,821,450 | |
| 5,461,792 | |

8.      The above U.S. registrations for the Kia Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the Kia Trademarks constitute *prima facie* evidence of their validity and of Kia's exclusive right to use the Kia Trademarks pursuant to 15 U.S.C. § 1057(b). True and correct copies of the United States Registration Certificates for the above-listed Kia Trademarks are attached hereto as **Exhibit 1**.

9.      The Kia Trademarks are distinctive when applied to the Kia Products, signifying to the purchaser that the products come from Kia and are manufactured to Kia's brand values. Whether Kia manufactures the products itself or contracts with others to do so, Kia has ensured that products bearing the Kia Trademarks are manufactured to brand values.

10.     The Kia Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1). The innovative marketing and product designs of the Kia Products have enabled the Kia brand to achieve widespread recognition and fame, and have made the Kia Trademarks some of the most well-known marks in the industry. The widespread fame, outstanding reputation, and significant goodwill associated with the Kia brand have made the Kia Trademarks valuable assets of Kia.

11.     Kia, directly and/or through its authorized affiliates, distributors, licensees, and dealership network, has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Kia Trademarks. Kia Products have also received media attention and consumer interest due to their high quality, performance, and innovative design. As a result, products bearing the Kia Trademarks are widely recognized and associated by consumers, the public, and the trade as being high-quality products sourced from Kia. Kia Products have become widely recognized around the world. The Kia Trademarks have achieved significant fame

and recognition which has only added to the distinctiveness of the marks. As such, the goodwill associated with the Kia Trademarks is of incalculable and inestimable value to Kia.

12.  Kia Products are sold to consumers throughout the United States through Kia's authorized distribution and dealership network. Kia's U.S.-facing website at https://www.kia.com/us/en allows customers to search for a dealership near their location, including several in the Chicago, Illinois, area. The https://www.kia.com/us/en website features proprietary content, images, and designs exclusive to the Kia brand.

**The Defendants**

13.  Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

14.  On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operations make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

### IV. DEFENDANTS' UNLAWFUL CONDUCT

15.  The success of the Kia brand has resulted in significant counterfeiting of the Kia Trademarks. Consequently, Kia has an anti-counterfeiting program and regularly investigates

6

suspicious e-commerce stores. In recent years, Kia has encountered numerous fully interactive, e-commerce stores offering Counterfeit Products on online marketplace platforms, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. At last count, global trade in counterfeit and pirated goods was worth an estimated $467 billion per year — accounting for a staggering 2.3% of all imports, according to the Organization for Economic Cooperation and Development (the "OECD").[2] The primary source of all those counterfeits, the OECD and others say, is China.[3]

16. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."[4] Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts.[5] Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.[6] Further, "E-commerce platforms

---

[2] *See* Press Release, Organization for Economic Cooperation and Development, *Global trade in fake goods reached USD 467 billion, posing risks to consumer safety and compromising intellectual property* (May 7, 2025), https://www.oecd.org/en/about/news/press-releases/2025/05/global-trade-in-fake-goods-reached-USD-467-billion-posing-risks-to-consumer-safety-and-compromising-intellectual-property.html.

[3] *Id.; see also, Intellectual Property Rights Seizure Statistics, Fiscal Year 2024*, U.S. Customs and Border Protection.

[4] *See* Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.

[5] Combating Trafficking in Counterfeit and Pirated Goods, *supra* note 4, at 22.

[6] *Id.* at 39.

create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters."[7]

17. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars from U.S. consumers and have sold the Counterfeit Products to residents of Illinois. Screenshots evidencing Defendant's infringing activities are attached as **Exhibit 2.**

18. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales of the Counterfeit Products by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars from U.S. consumers. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. On information and belief, Kia has not licensed or authorized Defendants to use any of the Kia Trademarks, and none of the Defendants are authorized retailers of genuine Kia Products.

19. Many Defendants also deceive unknowing consumers by using one or more Kia Trademarks without authorization within the content, text, and/or meta-tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Kia Products. Other e-commerce stores operating under the Seller Aliases omit using Kia Trademarks in the item title to evade enforcement efforts while using strategic item

---

[7] Chow, *supra* note 4, at 186-87.

titles and descriptions that will trigger their listings when consumers are searching for Kia Products.

20.     E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

21.     E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

22.     Defendants are collectively causing harm to Kia's goodwill and reputation because the effect of their unlawful actions taken together amplifies each harm and creates a single negative consumer impression. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. The combination of all Defendants engaging in the same illegal activity in the same time span causes collective harm to Kia in a way that individual actions, occurring alone, might not.

23.     E-commerce store operators like Defendants communicate with each other on chat rooms and through websites regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

24.     Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation despite Plaintiff's enforcement. E-

commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

25. Defendants are working to knowingly and willfully import, distribute, offer for sale, and sell the Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Kia, have knowingly and willfully used and continue to use the Kia Trademarks in connection with the advertisement, distribution, offering for sale, and sale of the Counterfeit Products into the United States and Illinois over the Internet.

26. Defendants' unauthorized use of the Kia Trademarks in connection with the advertising, distribution, offering for sale, and sale of the Counterfeit Products, including the sale of the Counterfeit Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

27. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

28. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered Kia Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.

The Kia Trademarks are distinctive marks. Consumers have come to expect the highest quality from Kia Products sold or marketed under the Kia Trademarks.

29. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the Kia Trademarks without Kia's permission.

30. Plaintiff is the exclusive owner of the Kia Trademarks. The United States Registrations for the Kia Trademarks (**Exhibit 1**) are in full force and effect. On information and belief, Defendants have knowledge of Plaintiff's rights in the Kia Trademarks and are willfully infringing and intentionally using counterfeits of the Kia Trademarks. Defendants' willful, intentional, and unauthorized use of the Kia Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

31. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

32. Kia has no adequate remedy at law and, if Defendants' actions are not enjoined, Kia will continue to suffer irreparable harm to its reputation and the goodwill of its well-known Kia Trademarks.

33. The injuries and damages sustained by Kia have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of the Counterfeit Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

34. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

35. Defendants' promotion, marketing, offering for sale, and sale of the Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Kia or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Kia.

36. By using the Kia Trademarks in connection with the sale of the Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

37. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

38. There is no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to the reputation and the associated goodwill of the Kia brand.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the Kia Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, promotion, marketing, advertising, offering for sale, or sale of any product that is not a genuine Kia Product or is not authorized by Kia to be sold in connection with the Kia Trademarks;

b. passing off, inducing, or enabling others to sell or pass off any products as genuine Kia Products or any other products produced by Kia that are not Kia's, or not produced under the authorization, control, or supervision of Kia and approved by Kia for sale under the Kia Trademarks;

c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Kia, or are sponsored by, approved by, or otherwise connected with Kia;

d. further infringing the Kia Trademarks and damaging Kia's goodwill; and

e. manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Kia, nor authorized by Kia to be sold or offered for sale, and which bear any of Kia's trademarks, including the Kia Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction including, without limitation, any online marketplace platforms such Amazon.com, Inc. ("Amazon"), eBay, Inc. ("eBay"), WhaleCo Inc. ("Temu") and Walmart, Inc. ("Walmart") (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Kia Trademarks;

3) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Kia Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

13

4) In the alternative, that Plaintiff be awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of not less than $1,000 and not more than $2,000,000 for each and every use of the Kia Trademarks;

5) That Plaintiff be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

7) Dated this 7th day of July 2026.          Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Justin T. Joseph
Trevor C. Talhami
Greer, Burns & Crain, Ltd.
200 W. Madison St. Suite 2100
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
jjoseph@gbc.law
ttalhami@gbc.law

*Counsel for Plaintiff Kia Corporation*